FILED
2014 Jun-05  AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL | ) | |
| MUTUAL CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No. CV-14-S-248-NW** |
| | ) | |
| THE RETIREMENT SYSTEMS | ) | |
| OF ALABAMA, ALABAMA | ) | |
| REAL ESTATE HOLDINGS, | ) | |
| INC., QUALITY COATINGS & | ) | |
| DRYWALL, INC., THE OHIO | ) | |
| CASUALTY INSURANCE | ) | |
| COMPANY, and LIBERTY | ) | |
| MUTUAL GROUP, INC., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), filed this declaratory judgment action on February 12, 2014.[1]  The case currently is before the court on the "Motion to Dismiss or in the Alternative to Stay" filed by defendants The Retirement Systems of Alabama ("RSA") and Alabama Real Estate Holdings ("AREH").[2]  Upon consideration of the motion, plaintiff's response,[3]

---

[1] Doc. no. 1 (Complaint).

[2] Doc. no. 6.  Defendants submitted evidence in support of their motion.  Federal Rule of Civil Procedure 12(d) states that,

and defendants' reply,[4] the court concludes the motion is due to be denied.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp.*

---

[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d) (alteration supplied). Thus, courts usually "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." *Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997)). The Eleventh Circuit "recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Financial Security Assurance*, 500 F.3d at 1284 (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Brooks*, 116 F.3d at 1368-69). Documents from prior judicial proceedings also can be considered without converting the motion to dismiss into one for summary judgment, because such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'" *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b); other citations omitted) (alterations supplied). Here, the documents attached by defendants are pleadings from the underlying state court action, and a courtesy copy of an unpublished federal district court opinion. Thus, it is not necessary to convert the motion to dismiss into one for summary judgment under Federal Rule of Civil Procedure 56.

[3] Doc. no. 12.

[4] Doc. no. 13.

*v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
>
> To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*., at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives

3

a motion to dismiss. *Id*., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis added).

## II. RELEVANT ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff seeks a judgment from this court declaring that it has no duty to defend or indemnify defendant Quality Coatings & Drywall, Inc. ("Quality Coatings"), and its sureties, Ohio Casualty Insurance Company ("Ohio Casualty"), and Liberty Mutual Group, Inc. ("Liberty Mutual"), for claims asserted against Quality Coatings by defendants RSA and AREH in the case styled *The Retirement Systems of Alabama, et al. v. Quality Coatings and Drywall, Inc., et al.*, Civil Action No. CV-2013-900131 in the Circuit Court of Lauderdale County, Alabama ("the

4

underlying litigation").[5]  The underlying litigation arose from the construction of the River Heritage Hotel in Florence, Alabama ("the Hotel").

Quality Coatings entered into a Construction Trade Contract with AREH in March of 2004.   Among other work to be performed, Quality Coatings was responsible for cold formed metal framing, gypsum drywall, and wall installation at the Hotel.[6]  AREH and Ohio Casualty later executed a surety bond in the amount of $2,151.655.  Ohio Casualty subsequently was acquired by Liberty Mutual, and both companies are parties to the underlying litigation, based upon Ohio Casualty's agreement to act as a surety for Quality Coatings under the Construction Trade Contract.[7]

RSA is a successor-in-interest to AREH on the Construction Trade Contract. Both RSA and AREH filed the underlying litigation against Quality Coatings and its bond companies, Ohio Casualty and Liberty Mutual, seeking to recover for the improper installation of drywall in the Hotel, and remediation of mold that developed as a result.  Specifically, RSA and AREH assert claims for breach of contract, breach of warranty, negligence, and a declaratory judgment.   They allege that Quality Coatings "constructed the demising walls on [the Hotel] such that there was a

---

[5] Complaint ¶ 11.

[6] *Id.*

[7] *Id.* ¶ 12.

separation in the firewall, a separation which renders the firewall non-compliant with the City of Florence's ordinances and defective, and caused the growth of mold in [the Hotel]."[8]

RSA and AREH seek to recover damages in the amount of $252,073.19 for expenses incurred in repairing, replacing, and remedying the allegedly defective drywall installed by Quality Coatings. They also seek to recover $322,380.30 for the costs of remediating the mold damage caused by the allegedly defective drywall. RSA and AREH have declared Quality Coatings in default of its contractual obligations, and demanded that Ohio Casualty and/or Liberty Mutual make payment under the performance bond. Both of those entities have refused payment. In addition, RSA and AREH have withheld payment due to Quality Coatings in the amount of $76,999.76 for work it performed on another project.[9]

Plaintiff issued Commercial General Liability Policy No. CX9 0675702 ("the Policy") to Quality Coatings for the period of September 1, 2011 to January 1, 2014.[10] Plaintiff currently is providing a defense to Quality Coatings in the underlying litigation under a reservation of rights, and Ohio Casualty and Liberty Mutual also

---

[8] *Id.* ¶ 13 (alterations supplied). The Complaint cites to "Exhibit A," which purportedly is a copy of the state court complaint, but the record does not actually contain an Exhibit A to plaintiff's complaint.

[9] *Id.* ¶ 15.

[10] *Id.* ¶ 17.

have sought a defense and indemnity from plaintiff.[11]

Plaintiff asks this court to issue a judgment declaring that it does not have a duty to defend or indemnify Quality Coatings, or either of its sureties.  Specifically, Penn National asserts:

> 37.  Quality Coatings did not employ subcontractors to perform the subject work.  Quality Coatings['] faulty construction of the firewall is not an accident and thus not an "occurrence" as defined by the Policy. Moreover, the firewall was constructed in 2004/2005[,] more than six years before the Penn National Policy was issued.  To the extent that any "property damage" arising from Quality Coatings' faulty workmanship occurred prior to the Penn National Policy[,] there is no "occurrence."

> 38.  The Fungi or Bacteria Exclusion expressly provides that the insurance does not apply to the claim in the Underlying Litigation. Moreover, damages sought in the Underlying Litigation, including . . . damages for the remediation of Quality Coatings['] faulty construction, are expressly excluded under the terms of the Policy, and therefore would not give rise to an "occurrence."  Thus, there is no "occurrence" under the Policy, and even if there ware, said "occurrence" would be excluded from coverage pursuant to the "fungi and bacteria," "commercial liability," and "business risks" exclusions.[12]

Additionally, plaintiff asserts that the claims asserted in the underlying litigation fall under a Policy exclusion for "expected" or "intended" injuries.[13] Finally, plaintiff asserts that it is not required to indemnify Ohio Casualty or Liberty Mutual because those entities are not named insureds or additional insureds under the

---

[11] Complaint ¶ 16.

[12] *Id.* ¶¶ 37-38 (alterations supplied).

[13] *Id.* ¶¶ 43-44.

Policy.[14]

Quality Coatings, Ohio Casualty, and Liberty Mutual filed an answer and counterclaims on March 26, 2014.[15]  All of those defendants asserted a counterclaim for breach of contract against plaintiff, based on the company's refusal to defend and pay the defense costs of Ohio Casualty and Liberty Mutual.[16]  Quality Coatings asserted a counterclaim against plaintiff for breach of the enhanced obligation of good faith, based upon plaintiff's alleged failure to communicate to Quality Coatings that it was providing a defense under a reservation of rights.[17]  Quality Coatings, Ohio Casualty, and Liberty Mutual also all asserted a counterclaim against plaintiff for bad faith, based upon plaintiff's alleged bad faith refusal to provide coverage for Ohio Casualty and Liberty Mutual.[18]

## III. RELEVANT PROCEDURAL HISTORY OF THE UNDERLYING LITIGATION

Owners Insurance Company ("Owners"), an entity that also issued a Commercial General Liability Policy (No. 38028913-11) and a Commercial Umbrella Policy (No. 4602891300) to Quality Coatings (together, the "Owners' Policies"), filed

---

[14] *Id.* ¶¶ 45-57.

[15] Doc. no. 9.

[16] *Id.* at 9 (Count One).

[17] *Id.* at 9-10 (Count Two).

[18] *Id.* at 10-11 (Count Three).

8

a motion to intervene in the underlying litigation on June 11, 2013.[19]  Owners stated

that it also was defending Quality Coatings in the underlying litigation under a

reservation of rights.[20]  It sought intervention in order "to gather facts related to the

Plaintiffs' claim and clarify the legal allegations against its insured in order to

determine whether there is coverage for Quality Coatings under its policy."[21]

Specifically, Owners stated the following possible reasons that coverage might be

lacking under the Owners' Policies:

a.   Owners' policies cancelled, at the request of the insured Quality
     Coatings, on September 1, 2011.  Damages alleged by RSA
     against Quality Coatings may not fall within Owners' policy
     period.

b.   The damages alleged by RSA against Quality Coatings may not
     arise from an "occurrence" as defined by Owners' policy.

c.   Owners' policy contains a complete exclusion for damage arising
     from mold or mildew.

d.   The complaint against Quality Coatings alleges breach of
     contract.  Breach of contract is not an "occurrence" as defined by
     Owners' policy and Alabama law.  Further, Owners' policy
     contains exclusion b.  Exclusion b removes coverage for any
     "bodily injury" or "property damage" for which the insured is
     obligated to pay damages by reason of the assumption of liability

---

[19] Doc. no. 7 ("Notice of Filing Materials in Support of Defendant's Motion to Dismiss or in the Alternative, to Stay"), Exhibit 1 (Motion to Intervene in Case No. 41-CV-2013-900131 in the Circuit Court of Lauderdale County, Alabama) ¶ 1.

[20] *Id.* ¶ 5.

[21] *Id.* ¶ 6.

in a contract or agreement.

e.      The complaint by RSA against Quality Coatings alleges breach of warranty.  Breach of warranty is a type of breach of contract.  See discussion under letter d. above.  Further, the definition of "your work" includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work."   Owners' policy contains exclusion l which eliminates coverage for damage to "your work."

f.      The complaint filed by RSA against Quality Coatings alleges negligence in the performance of the scope of work of the contract.  While couched in terms of negligence, this count is basically a restatement of the allegations in the count for breach of contract.  See discussion under letter d above.  Further, faulty workmanship, in the form of negligent construction, is not considered an "occurrence" under Alabama law.

g.      Owners' policy contains exclusion l which eliminates coverage for "property damage" to "your work."  Owners' policy does not cover replacement of faulty work performed by the insured.

h.      The complaint filed by RSA against Quality Coatings asks the court for a declaratory judgment.  A declaratory judgment asks the court to declare the rights and obligations of the parties to the lawsuit. Owners' policy covers only "bodily injury" or "property damage."   A declaration of rights and obligations is neither "bodily injury" nor "property damage."

i.      Quality Coatings may have violated a condition of the policy requiring it to provide timely notice of an occurrence to Owners.[22]

Owners emphasized that it was not asking the state court to "decide any issue of

---

[22] *Id.* ¶¶ 3(a)-(i).

coverage," or to declare the respective parties' rights.[23]  Instead, Owners asked to be allowed to participate in discovery, but not in trial, except to submit "special jury verdict forms and/or special interrogatories, through the court, to the jury, concerning any verdict entered against Quality Coatings, Inc. in order to determine whether the verdict or any portion of the verdict is covered by Owners' policy."[24]

The state court granted Owners' motion on June 14, 2013.[25]  On July 3, 2013, RSA and AREH filed a response to the motion to intervene and a request for the state court to reconsider its previous order granting that motion.  Among other reasons, RSA and AREH asserted that Owners would have the "right to file a declaratory judgment action regarding these issues once this case is resolved[,] particularly as the threshold issues of coverage in a potential declaratory judgment action and the issues presented in this action are not the same."[26]  In the brief filed in this court by RSA and AREH in support of their motion to dismiss or to stay, those parties represent that the

---

[23] *Id.* ¶ 7.

[24] *Id.* at 4 (Demand for Relief) ¶ d.

[25] Doc. no. 7 ("Notice of Filing Materials in Support of Defendant's Motion to Dismiss or in the Alternative, to Stay"), at Exhibit 3 (June 14, 2013 Order of the Circuit Court of Lauderdale County, Alabama).

[26] Doc. no. 7 ("Notice of Filing Materials in Support of Defendant's Motion to Dismiss or in the Alternative, to Stay"), Exhibit 2 (Response to Motion to Intervene and Request for Reconsideration") ¶ 6 (alteration supplied).

state court has not yet ruled on the motion for reconsideration.[27]   They also represent that plaintiff Penn National never filed a motion to intervene in the underlying litigation.[28]

## III. DISCUSSION

RSA and AREH argue that the complaint for declaratory judgment filed by plaintiff, Penn National, in this court should be dismissed pursuant to the Supreme Court's decision in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).   There, the Supreme Court confirmed that district courts have broad discretion in deciding whether to dismiss or stay a federal declaratory judgment action during the pendency of parallel state court proceedings, explaining:

> There is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action.   By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.   Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.   In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within

---

[27] Doc. no. 8 ("Memorandum in Support of Defendants' Motion to Dismiss or in the Alternative to Stay"), at 3, ¶ 6.

[28] *Id.* at 3, ¶ 7.   Plaintiff appears to agree with this representation.   *See* doc. no. 12 (Plaintiff's "Response and Memorandum of Law in Opposition to the Retirement Systems of Alabama's and Alabama Real Estate Holdings, Inc.'s Motion to Dismiss or in the Alternative to Stay Proceedings"), at 4, ¶ 6 ("RSA has filed a Response to Motion to Intervene and Request for Reconsideration which remains pending in the Underlying Litigation.").

their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.* at 288 (citations and footnote omitted).  The Court also noted that, "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy."  *Id.* at 288 n.2.

The Eleventh Circuit, speaking through the panel decision in *Ameritas Variable Life Insurance Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005), specifically addressed a "federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of *parallel litigation* in the state courts." *Id.* at 1331 (emphasis supplied).  In *Ameritas*, the court held that district courts have "'substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings.'"  *Id.* at 1332 (quoting *Wilton*, 515 U.S. at 286).  The Eleventh Circuit also provided a list of factors to aid district courts in balancing state and federal interests.  *Id.* at 1331.  The court specifically noted, however, that the "list is neither absolute nor is any one factor controlling"; instead, it serves as "merely [a] guidepost."  *Id.* (alteration supplied).  Those guideposts include:

13

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" — that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.*

As an initial matter, RSA and AREH contend that this case and the underlying litigation are "parallel litigation," as contemplated by the Eleventh Circuit in

*Ameritas*, because "[t]he Circuit Court of Lauderdale County, Alabama, by its order granting Owners' Motion to Intervene[,] has already assumed jurisdiction over many of the same issues that are raised by Penn National's Complaint for Declaratory Judgment[ in this action].[29]   Specifically, according to RSA and AREH,

> Owners' Intervention and Penn National's Complaint for Declaratory Judgment involve many of the same issues:
>
> (A)   whether the damages alleged by RSA against Quality Coatings fall within the subject policy periods . . . .;
>
> (B)   whether the damages alleged by RSA against Quality Coatings arise from an "occurrence" as defined by the policies. . . .;
>
> (C)   whether RSA's damages are excluded by certain mold, mildew, fungi and bacteria exclusions. . . .;
>
> (D)   whether the policies cover contractual claims. . . .;
>
> (E)   whether RSA's breach of warranty claims are excluded pursuant to policy exclusions dealing with contractual liability. . . .;
>
> (F)   whether the claims for negligent construction are excluded by contractual liability language in the policies. . . .;
>
> (G)   whether the subject policies cover damages to "your work." . . .[30]

This court disagrees.  This case and the underlying litigation are not "parallel

---

[29] Doc. no. 8, at 5 (alterations supplied).

[30] *Id.* at 6-7 (citations to the record omitted).

proceedings." Penn National is not a party to the underlying litigation, by intervention or otherwise.  The central issue in the underlying litigation is Quality Coatings' liability to RSA and AREH for faulty work performed, whereas the central issue in the present case is Penn National's obligation to defend and indemnify Quality Coatings. *See, e.g., State Farm Fire and Casualty Co. v. Knight*, No. 09-0783-WS-B, 2010 WL 551262, *3 n.9 (S.D. Ala. Feb. 11, 2010) ("Where the declaratory judgment action is brought by an insurer against an insured, there are no parallel proceedings if '(1) the insurer was not a party to the suit pending in state court; and (2) the state court actions involved issues regarding the insured's liability, whereas the federal suit involved matters of insurance coverage.'") (quoting *Continental Casualty Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1006 (8th Cir. 2006)).

Owners' intervention in the underlying litigation does not alter that conclusion. Owners specifically stated that it was not seeking a declaration regarding its obligation to provide a defense *or* indemnity coverage to any party in the underlying litigation. Moreover, to the extent that the special jury verdict forms and special interrogatories Owners asked to submit to the jury in the underlying litigation will concern issues of coverage, it will be coverage under the policy *Owners* issued to Quality Coatings, not coverage under the policy *Penn National* issued to Quality Coatings.  Even though Quality Coatings' two policies may bear some similarities, they are not identical.

16

Accordingly, a finding of coverage under the Owners' policies will not necessarily dictate a finding of coverage under the Penn National policy. Only the Penn National policy is at issue *in this suit.*

Additionally, the *Ameritas* factors, considered as a whole, do not weigh in favor of dismissing or staying this case.[31] This declaratory judgment action would settle the question of coverage under Quality Coatings' policy *with Penn National* — a question that has *not* been raised in the underlying litigation. There is no concern about friction between, or inconsistent rulings from, the state court and this court, because the same issues are not being decided in both fora. Specifically, the factual underpinnings of the underlying litigation — *i.e.,* Quality Coatings' liability to RSA and AREH for allegedly faulty workmanship — will not be relevant to the issue of coverage that forms the basis of this lawsuit. The same is true for any findings regarding coverage for RSA and AREH's claims *under an entirely separate policy issued by an entirely separate insurer, Owners.*

## IV. CONCLUSION AND ORDER

---

[31] Because this case and the underlying litigation are not "parallel litigation," it is not even necessary to consider the *Ameritas* factors. *See Atlantic Casualty Insurance Co. v. GMC Concrete Co., Inc.*, No. 07-0563-WS-B, 2007 WL 4335499, *3 (S.D. Ala. Dec. 7, 2007) ("A number of courts have either held or suggested that the absence of parallel proceedings undermines the premise of a *Wilton* discretion analysis, rendering it inappropriate or inapplicable.") (citations omitted). Even so, the court will discuss the *Ameritas* factors here for the sake of completeness.

In accordance with the foregoing, the "Motion to Dismiss or in the Alternative to Stay" filed by defendants RSA and AREH is DENIED.  Those defendants must file an answer to plaintiff's complaint on or before June 12, 2014.

DONE this 5th day of June, 2014.

_____
United States District Judge