FILED
2015 Apr-21  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Civil Action No. CV-14-S-248-NW** |
| **THE RETIREMENT SYSTEMS OF ALABAMA, ALABAMA REAL ESTATE HOLDINGS, INC., QUALITY COATINGS & DRYWALL, INC., THE OHIO CASUALTY INSURANCE COMPANY, and LIBERTY MUTUAL GROUP, INC.,** | ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDERS

Plaintiff, Pennsylvania National Mutual Casualty Insurance Company, filed this action on February 12, 2014.[1]  The company seeks a judgment declaring that it has no duty to defend or indemnify defendant Quality Coatings & Drywall, Inc., and its sureties, defendants The Ohio Casualty Insurance Company, and Liberty Mutual Group, Inc., for claims asserted against those entities by defendants Retirement Systems of Alabama, and Alabama Real Estate Holdings, Inc., in the state court action

---

[1] Doc. no. 1 (Complaint).

pending in the Circuit Court of Lauderdale County, Alabama, as Civil Action No. CV-2013-900131 (*The Retirement Systems of Alabama, et al. v. Quality Coatings and Drywall, Inc., et al.*).[2]

Defendants Quality Coatings & Drywall, Inc., The Ohio Casualty Insurance Company, and Liberty Mutual Group, Inc. assert counterclaims for breach of contract and bad faith denial of coverage.[3]  Those counterclaims are based upon plaintiff's alleged refusal to defend The Ohio Casualty Insurance Company and Liberty Mutual Group, Inc., in the underlying action.

The case presently is before the court on two motions:  plaintiff's motion for summary judgment, and defendants' cross-motion for partial summary judgment on plaintiff's claim for declaratory relief and on their own counterclaim for breach of contract.[4]  Upon consideration, the court concludes that summary judgment is due to be entered in favor of plaintiff on its motion for summary judgment, as well as on defendants' cross-motion for partial summary judgment.

## I.  RELEVANT PROCEDURAL HISTORY

The underlying, state-court action arose out of the construction of the "River

---

[2] *See id.* ¶ 11.

[3] Doc. no. 9 (Defendants' Answer and Counterclaims). This court granted defendants' motion to dismiss their counterclaim of "breach of enhanced obligation of good faith" on March 31, 2015. Doc. no. 65.

[4] *See* doc. no. 26 (Plaintiff's Motion for Summary Judgment); doc. no. 29 (Defendants' Motion for Partial Summary Judgment).

Heritage Hotel" in Florence, Alabama ("the Hotel").  Defendant Quality Coatings & Drywall, Inc. ("Quality Coatings"), entered into a Construction Trade Contract with defendant Alabama Real Estate Holdings ("AREH") in March of 2004.  Among other work to be performed, Quality Coatings was responsible for cold formed metal wall framing, gypsum drywall, and wall installation at the Hotel.[5]  AREH and defendant The Ohio Casualty Insurance Company ("Ohio Casualty") later executed a performance bond in the amount of $2,151,655.  Ohio Casualty subsequently was acquired by defendant Liberty Mutual Group, Inc. ("Liberty Mutual"), and both companies are parties to the underlying, state-court action, based upon Ohio Casualty's agreement to act as a surety for Quality Coatings under the Construction Trade Contract.[6]

The Retirement Systems of Alabama ("RSA") is a successor-in-interest to AREH on Quality Coatings' Construction Trade Contract.  RSA and AREH commenced the underlying, state-court action against Quality Coatings and its sureties, Ohio Casualty and Liberty Mutual, seeking the recovery of damages arising out of the allegedly defective construction work performed by Quality Coatings at the Hotel.[7]

---

[5] *See* doc. no. 1 (Complaint) ¶ 11.

[6] *Id.* ¶ 12.

[7] *Id.* ¶ 13.

3

Plaintiff, Pennsylvania National Mutual Casualty Insurance Company, issued Commercial General Liability Policy No. CX9 0675702 ("the Policy") to Quality Coatings for the period beginning September 1, 2011.[8] Plaintiff currently is providing a defense to Quality Coatings in the underlying, state-court action under a reservation of rights, and Ohio Casualty and Liberty Mutual also have sought a defense and indemnity from plaintiff.[9]

## II.  DISCUSSION

The complaint filed by RSA and AREH in the underlying, state-court action alleges, among other things, that

> RSA and AREH were damaged by these Defendants as a result of their negligent conduct in performing their scope of work such that there was a separation in the firewall, a separation which renders the firewall non-compliant with the City of Florence's ordinances and defective, and *caused the growth of mold in the subject building*.
>
> 38.     As a direct and proximate consequence of the negligence of Defendants Quality Coatings . . . , RSA and AREH have suffered damages, including costs of remediation and repair.

Doc. no. 1-1 (State Court Complaint), ¶¶ 37 & 38, at ECF 10 (emphasis supplied).[10]

---

[8] *Id.* ¶ 17.

[9] *Id.* ¶ 16.

[10] "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically. *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009). Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header." *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5 (D.D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)). Even so, the Bluebook recommends "against citation to ECF pagination in

Plaintiff contends in the action pending in this court that it does not owe a duty to defend or indemnify defendants in the underlying state-court action because the claims asserted there are not covered under the terms of its Policy.[11]

"Whether there is a duty to *indemnify* under the policy will depend on the facts adduced at the trial" in the underlying action. *Hartford Casualty Insurance Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1013 (Ala. 2005) (emphasis supplied). Even so, the duty to *defend* is broader than the duty to *indemnify*. *See id.* at 1009. Accordingly, where the court finds that there is no duty to *defend*, it also must find that there is no duty to *indemnify*.

When liability insurance coverage is disputed, the insured has the burden to establish that the claim at issue is "covered under the policy." *State Farm Fire & Casualty Co. v. Shady Grove Baptist Church*, 838 So. 2d 1039, 1043 (Ala. 2002). Once coverage is established, the insurer "has the burden of proof in asserting that a claim is excluded under its policy." *Id.*; *see also Appleman on Insurance* § 1.07 (Law Library ed. 2013).

The Alabama Supreme Court summarized the law for determining whether an insurance company has a duty to provide a defense for its insured in the case of

---

lieu of original pagination." *Wilson*, 772 F. Supp. 2d at 257 n.5. Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings. When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

[11] *See* doc. no. 26 (Plaintiff's Summary Judgment Brief), at 19.

*Tanner v. State Farm Fire & Casualty Co.*, 874 So. 2d 1058 (Ala. 2003), saying that

the question of

> [w]hether an insurance company owes its insured a duty to provide a
> defense in proceedings instituted against the insured is determined
> primarily by the allegations contained in the complaint.
>
> . . . .
>
> In three cases, this Court held that, if the complaint against the
> insured does not, on its face, allege a covered accident or occurrence,
> "other facts which did exist but were not alleged could be taken into
> consideration" to establish coverage because the policy "should be
> liberally construed in favor of the insured."  However, this Court has
> never held that, even though the allegations of a complaint do allege a
> covered accident or occurrence, the courts may consider evidence
> outside the allegations to disestablish the duty to defend. . . .
>
> Accordingly, we will summarize the law for determining the
> existence or nonexistence of an insurer's duty to defend.  If the allegedly
> injured person's complaint against the insured alleges a covered accident
> or occurrence, then the insurer owes the duty to defend even though the
> evidence may eventually prove that the gravamen of the complaint was
> not a covered accident or occurrence.  If the complaint against the
> insured does not, on its face, allege a covered accident or occurrence, but
> the evidence proves one, then the insurer likewise owes the duty to
> defend.  *The insurer owes no duty to defend only if neither does the
> complaint against the insured allege a covered accident or occurrence
> nor does the evidence in the litigation between insurer and insured prove
> a covered accident or occurrence.*  If the allegedly injured person's
> complaint against the insured alleges or the evidence proves not only
> claims based on a covered accident or occurrence but also claims not
> based on a covered accident or occurrence, the insurer owes a duty to
> defend at least the claims based on a covered accident or occurrence.

*Id.* at 1063–65 (internal quotation marks and citations omitted, alteration and emphasis

6

supplied).

The Alabama Supreme Court also has held that, "[w]here facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Casualty Insurance Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005) (alteration supplied).  Thus, as another court within this Circuit has observed, when attempting "[t]o ascertain whether [an insurer] owes [its insured] a duty to defend, the court focuses on the factual allegations in the complaint, not on the legal theories asserted."  *Cotton States Mutual Insurance Co. v. Daniel*, No. 3:07–cv–843–WKW, 2008 WL 4999097, *18 (M.D. Ala. Nov. 20, 2008) (alterations supplied).

The pertinent coverage provisions of the Policy at issue read as follows:

**SECTION I - COVERAGES**

**COVERAGE A[.]   BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.     **Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

7

. . .

**b.**     This insurance applies to "bodily injury" and "property damages" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
. . .

## SECTION V – DEFINITIONS

. . .

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Doc. no. 26-6 (The Policy), at 1, 14, 16 (alteration and ellipses supplied).

In the underlying, state-court complaint, RSA and AREH allege two ways in which Quality Coatings' faulty construction work at the Hotel resulted in "a separation in the firewall" and, thereby, caused property damage: *i.e.*, (1) it rendered the firewall itself defective and non-compliant with city ordinances; and (2) it "caused the growth of mold" in the building.[12]  Each of those conditions independently could have caused the "property damage" alleged in the underlying action — *i.e.*, "the cost of remediation and repair."[13]  Accordingly, this court must determine whether either condition is "a covered accident or occurrence" under the terms of the Policy. *Tanner*,

---

[12] Doc. no. 1-1 (State Court Complaint), at ECF 10.

[13] *Id.*

874 So. 2d at 1065.  In making that determination, the court will look beyond the "bare allegations of the complaint" to the evidence in the underlying litigation.[14] *Canal Insurance Co. v. Cook*, 564 F. Supp. 2d 1322, 1327 (M.D. Ala. 2008) (Thompson, J.).

### 1.    Property damage to the defective firewall

Plaintiff contends that "the improperly constructed firewall, standing alone, is not an 'occurrence' that gives rise to coverage" under the terms of the Policy.[15]  The Alabama Supreme Court recently explained when faulty workmanship may be considered an "occurrence" in the case of *Owners Insurance Co. v. Jim Carr Homebuilder, LLC*, — So. 3d —, 2014 WL 1270629 (Ala. Mar. 28, 2014), saying that

> our caselaw makes clear that faulty workmanship itself is not "damage" caused by an "occurrence" or "accident"; thus, the cost to repair or replace faulty workmanship is not covered by the policy.  *Town & Country Property, L.L.C. v. Amerisure Insurance Co.*, 111 So. 3d 699, 706 (Ala. 2011).   However, damage that is the result of faulty workmanship on the part of the insured contractor — like water damage to personal property caused by a leaky, poorly constructed roof — can constitute an "occurrence."  *Id.*  This concept is consistent with the idea that the purpose of a CGL ["Commercial General Liability"] policy is to protect the insured contractor from tort liability, but not to protect it from its own malpractice:  "[A] CGL policy is intended to protect an insured from bearing financial responsibility for unexpected and accidental

---

[14] In an opinion entered in the instant action as document number 63, this court found that, because the underlying, state-court complaint did not, on its face, allege a covered accident or occurrence, the court may look beyond that pleading to the evidence in the underlying litigation to determine plaintiff's duty to defend.  *See* doc. no. 63 (Order), at 7.

[15] Doc. no. 26 (Plaintiff's Summary Judgment Brief), at 13.

> damage to people or property while a performance bond is intended to insure the contractor against claims for the cost of repair or replacement of faulty work." *Town & Country*, 111 So. 3d at 707 (quoting *Essex Insurance Co. v. Holder*, 372 Ark. 535, 539, 261 S.W. 3d 456, 459 (2007) (quoting in turn *Nabholz Construction Corp. v. St. Paul Fire & Marine Insurance Co.*, 354 F. Supp. 2d 917, 923 (E.D. Ark. 2005))). There is no coverage to replace poor work, but there is coverage to repair damage caused by the poor work.

*Owners*, 2014 WL 1270629 *9 (first alteration supplied, some internal quotation marks omitted).  Based upon the foregoing, this court finds that the cost to repair the firewall itself, simply because it was defective and non-compliant with city's building code, is not "damage" caused by an "occurrence" or "accident."  *Id.*

Even so, defendants contend that injury to property *other than the firewall* incurred in the process of remediating the firewall itself, as well as lost rents suffered during that process, constitutes an "occurrence."[16]  Defendants cite *United States Fidelity and Guaranty Co. v. Andalusia Ready Mix, Inc.*, 436 So. 2d 868 (Ala. 1983), a case in which the Alabama Supreme Court held that injury to a structure incurred during the replacement of the insured's defective product constituted "property damage" beyond the insured's faulty workmanship.  *Id.* at 872.  In the underlying, state-court action, RSA and AREH have alleged damage to property other than the

---

[16] *See* doc. no. 30 (Defendants' Response to Summary Judgment Motion), at 11–13. Document number 30 was filed by defendant Quality Coatings, but defendants Ohio Casualty and Liberty Mutual adopted and incorporated that brief into their own summary judgment brief, filed as document number 31.  Accordingly, the court considers the arguments made in document number 30 as made by "defendants."

firewall itself, but they do not allege that the damage was incurred in the process of remediating the firewall.[17]  Rather, they allege that it was incurred in the process of remediating *condensation*.[18]  Accordingly, the rationale of *Andalusia Ready Mix* does not apply.

Defendants also cite the following language from the underlying, state-court complaint when arguing that RSA and AREH allege injury to property other than the firewall incurred during the process of remediating the firewall itself: "As a further and direct consequence of Quality Coatings' defective work and its failure to properly construct its scope of work on the Florence Project, *other property and features of the Florence Project have been damaged*."[19]  The allegation of damage to "other property and features" is vague and, therefore, cannot support defendants' contention that RSA and AREH have alleged the specific type of property damage that falls within the exception described in *Andalusia Ready Mix*.

### 2.    Property damage allegedly caused by the growth of mold

Plaintiff correctly contends that the second cause of property damage alleged in the underlying, state-court complaint — *i.e.*, "the growth of mold" — falls under the Policy's Fungi or Bacteria Exclusion, which excludes from coverage claims for:

---

[17] Doc. no. 26-4 (RSA and AREH State Court Responses to Interrogatories) ¶ 4.

[18] *Id.*

[19] Doc. no. 1-1 (State Court Complaint) ¶ 15 (emphasis supplied).

a.     "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

. . .

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Doc. no. 26-8 (Policy Fungi or Bacteria Exclusion), at ECF 2.

Even so, Quality Coatings contends that the underlying complaint also alleges property damage caused by "condensation," a condition that does not fall within the Fungi or Bacteria Exclusion.[20]  It should be noted that the word "condensation" does not appear anywhere in the underlying complaint, and only appears in RSA's and AREH's discovery responses.[21]  Moreover, RSA and AREH unequivocally state in their responses to plaintiff's interrogatories in the present action that they "are *not*

---

[20] *See* doc. no. 44 (Quality Coatings' Reply), at 27.

[21] *See* doc. no. 1-1 (State Court Complaint); *see, e.g.*, doc. no. 26-4 (RSA and AREH State Court Responses to Interrogatories).

*claiming* any separate condensation damages, *only mold damages*."[22]  Even if this court, looking beyond the complaint to the evidence in the underlying action, were to find that RSA and AREH have suffered condensation damages, the "remediation and repair" of that condensation would not escape the Fungi or Bacteria Exclusion.  That provision excludes property damage arising "in whole or *in part*" from the "actual, alleged or *threatened* . . . existence of" mold in the Hotel.[23]  RSA's and AREH's discovery responses demonstrate that condensation in the Hotel necessitates remediation due to the threat of mold.  For example, in the underlying litigation, and in response to the interrogatory asking RSA and AREH to "explain in detail how the separation in the firewall[] as alleged in . . . the complaint *causes the growth of mold* in the [Hotel]," those defendants responded that the separation "allows for unobstructed movement of air in the wall cavity setting up a condition *whereby water vapor condenses within the wall cavity* and/or behind the vinyl wall covering."[24]  Thus, whenever condensation is identified, it must be eliminated in order to avoid the development of mold.  Remediation and repair as a result of condensation cannot be separated from remediation and repair as a result of the threat of mold.  Indeed, RSA

---

[22] Doc. no. 58 (RSA and AREH Responses to Plaintiff's Interrogatories), at ECF 15, ¶ 3 (emphasis supplied).

[23] Doc. no. 26-8 (Policy Fungi or Bacteria Exclusion), at ECF 2 (ellipsis and emphasis supplied).

[24] Doc. no. 1-4 (State Court Responses to Interrogatories), at ECF 12, ¶ 2 (ellipsis and emphasis supplied).

and AREH conflate condensation remediation damages with mold remediation damages in their responses to interrogatories in the underlying action.[25]   Accordingly, plaintiff has met its burden of showing that any "condensation" damages alleged in the underlying action also fall within the Policy's Fungi or Bacteria Exclusion.

None of the conditions alleged in the underlying, state-court action as having caused property damage at the Hotel is covered under the terms of the Policy.  Thus, plaintiff owes no duty to defend or indemnify defendants under the terms of the Policy.  Accordingly, plaintiff did not breach any duty under the Policy when it refused to defend Ohio Casualty and Liberty Mutual in the underlying action.  It follows, therefore, that summary judgment is due to be entered in favor of plaintiff on its claim for declaratory relief, as well as on defendants' counterclaims for breach of contract and bad faith denial of coverage.  *See Ex parte Alfa Mutual Insurance Co.*, 799 So. 2d 957, 962–64 (Ala. 2001) (holding that a successful breach of contract claim is a prerequisite for an insured's claim for bad faith denial of coverage).

### III.  CONCLUSION AND ORDERS

For the reasons explained above, plaintiff's motion for summary judgment is GRANTED, and it is ORDERED, ADJUDGED, and DECREED that plaintiff, Pennsylvania National Mutual Casualty Insurance Company, has no duty under the

---

[25] *See, e.g., id.* at ECF 15, ¶ 8 (alterations supplied) (grouping "firewall" damages and "mold and condensation remediation" damages).

14

terms of the commercial general liability insurance policy bearing Policy Number CX9 0675702 and issued to Quality Coatings & Drywall, Inc., to either provide a defense to or to indemnify Quality Coatings & Drywall, Inc., The Ohio Casualty Insurance Company, or Liberty Mutual Group, Inc., in connection with the claims alleged in the state court action styled *The Retirement Systems of Alabama, et al. v. Quality Coatings and Drywall, Inc., et al*., currently pending in the Circuit Court of Lauderdale County, Alabama, as Civil Action No. CV-2013-900131.   It is further ORDERED that the cross-motion for partial summary judgment filed by defendants Quality Coatings & Drywall, Inc., The Ohio Casualty Insurance Company, and Liberty Mutual Group, Inc., is DENIED, and all counterclaims asserted by those defendants are DISMISSED with prejudice.

All claims in this action now having been disposed of by this and prior orders of the court, the Clerk is directed to close this file.  Costs are taxed to defendants.

**DONE** and **ORDERED** this 21st day of April, 2015.

_____
United States District Judge